## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORI GRAFF**<br>Tabernacle, NJ 08088<br><br>          *Plaintiff,*<br><br>   v.<br><br>**WAWA, INC.**<br>260 West Baltimore Pike<br>Media, PA 19063<br><br>          *Defendant*. | **CIVIL ACTION NO.** |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Lori Graff, brings this action against her former employer, Wawa, Inc. ("Defendant"), for discriminating against Plaintiff based upon her age (57 at the time of termination) and for retaliating against Plaintiff because of her complaints of age discrimination.

Defendant's unlawful conduct includes subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment for false and pretextual reasons, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

Plaintiff seeks all appropriate relief, including back-pay, front-pay, compensatory damages, liquidated damages, attorneys' fees and costs, and all other relief that this Court deems appropriate.

### II.   PARTIES

1.    Plaintiff, Lori Graff, is an individual and a citizen of the State of New Jersey. Plaintiff resides in Tabernacle, New Jersey.

1

2.      Plaintiff was born in 1967 and was fifty-seven (57) years of age at the time of her termination in February 2025.

3.      Defendant Wawa, Inc. is a corporation incorporated in the State of New Jersey with a principal place of business located at 260 West Baltimore Pike, Media, PA 19063.

4.      Defendant Wawa, Inc. is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.      Defendant Wawa, Inc. maintains offices and conducts business operations within the Eastern District of Pennsylvania judicial district.

6.      At all times material hereto, Plaintiff primarily worked from Defendant's business offices in Media, Pennsylvania.

7.      At all times material hereto, Defendant employed twenty (15) or more employees.

8.      At all times material hereto, Defendant acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of its business.

9.      At all times material hereto, Defendant was an employer within the meaning of the statutes which form the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III.   <u>JURISDICTION AND VENUE</u>

13.     The causes of action which form the basis of this matter arise under the ADEA and the PHRA.

14.     This Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. §626(c), 28 U.S.C. §1331 and 28 U.S.C. §1332.

15. This Court has jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367 and 28 U.S.C. §1332.

16. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

17. On or about March 13, 2025, Plaintiff filed a timely complaint of discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of age discrimination and retaliation alleged herein.

18. Plaintiff's PHRC complaint was dual-filed with the Equal Employment Opportunity Commission ("EEOC").

19. Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of Plaintiff's PHRC complaint (with personal identifying information redacted).

21. On or about April 6, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's complaint of discrimination.

22. Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of the EEOC Notice of Right to Sue (with personal identifying information redacted).

23. Plaintiff has exhausted all administrative remedies and has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

24. Plaintiff was hired by Defendant in January 2018.

25. As of her termination in February 2025, Plaintiff held the position of Senior Quality Assurance Risk & Safety Professional.

26. Plaintiff primarily worked out of Defendant's offices located in Media, PA.

27. Plaintiff last reported to Amanda Douglas ("Douglas"), Quality Assurance Risk & Safety Program Manager.

28. Douglas is younger than Plaintiff.

29. Douglas reported to Nancy Wilson ("Wilson"), Director, Quality Assurance & Risk Management.

30. Wilson is younger than Plaintiff.

31. Plaintiff began reporting to Douglas, and indirectly to Wilson, in or about February 2020.

32. Douglas had no role in Plaintiff being hired at Defendant.

33. Wilson had no role in Plaintiff being hired at Defendant.

34. Plaintiff was the oldest employee reporting directly or indirectly to Douglas as of her termination.

35. From approximately March 2020 through late-2021, Plaintiff primarily worked remotely due to the Covid-19 pandemic.

36. During Plaintiff's time reporting to Douglas and Wilson, Plaintiff was treated differently and worse than younger employees on Douglas's team. This includes, by way of example only and without limitation:

    a. Being ignored;

    b. Being assigned less-desirable, lower-level tasks;

    c. Having her input and ideas dismissed without legitimate basis;

    d. Being ostracized;

    e. Being given less opportunities for success and advancement, including being denied, without legitimate explanation, the opportunity to receive

a CF-PS certification (Certified Professional in Food Safety) which was provided to younger employees on the team and paid for by Defendant;

f. Being provided with false and overly-harsh criticism;

g. Being held to a stricter standard;

h. Generally being treated in a rude and demeaning manner;

i. Being subjected to derogatory comments, including Douglas telling Plaintiff that she did not like Plaintiff's face, but when asked to explain the comment, being unable to provide any legitimate explanation; and

j. Having Plaintiff's job description modified, resulting in diminished and less-desirable responsibilities, without legitimate explanation.

37. Defendant treated Plaintiff in this manner because of her age.

38. Younger employees were not subjected to this same or similar conduct.

39. On or about April 30, 2024, in a meeting with Douglas, Douglas provided Plaintiff with criticism concerning an event from the previous day (April 29th).

40. Douglas's criticism was overly-harsh and false.

41. Plaintiff did not do anything wrong in connection with the incident on April 29, 2024, and Douglas was aware of that.

42. Plaintiff understood that she was being falsely criticized during the April 30, 2024 meeting because of her age.

43. During the April 30, 2024 meeting, Douglas made no mention of any potential progressive discipline, corrective action or write-up.

44. The following day, May 1, 2024, Plaintiff met with human resources.

5

45. During her May 1, 2024 discussion with human resources, Plaintiff complained that she was being treated differently because of her age.

46. Among other things, Plaintiff informed human resources of the April 30, 2024 discussion with Douglas where she falsely criticized Plaintiff, and Plaintiff explained that Douglas appeared to be targeting her due to her age, not at all limited to the April 30th incident. Plaintiff explained that she was being held to a higher standard compared to the other, younger employees on the team, without any legitimate basis.

47. Douglas was aware that Plaintiff met with human resources on May 1, 2024.

48. Prior to May 1, 2024, Plaintiff had not submitted a complaint of discrimination at Defendant.

49. Prior to May 1, 2024, Plaintiff had not been issued any progressive discipline or corrective action at Defendant, which includes not being issued a coaching or written warning.

50. Prior to May 1, 2024, Plaintiff had no reason to believe her job was in jeopardy.

51. Prior to May 1, 2024, no one had indicated to Plaintiff that she would be, or even might be, issued potential progressive discipline or corrective action.

52. Defendant failed to take appropriate corrective or remedial measures, and failed to investigate Plaintiff's May 1, 2024 complaints of age discrimination.

53. After Plaintiff engaged in protected activity on May 1, 2024, Plaintiff was treated differently and even worse than she had been prior to her complaint of discrimination.

54. On or about May 7, 2024, Douglas notified Plaintiff that she was going to be issued a "Coaching" discipline.

55. Defendant failed to provide Plaintiff with documentation of the Coaching on May 7, 2024.

6

56. Defendant's stated reason on May 7, 2024 for issuing Plaintiff a Coaching was that Plaintiff attended a meeting that she was not supposed to.

57. This stated reason is false.

58. Plaintiff objected to the Coaching and explained that it was unfounded.

59. On or about May 8, 2024, Plaintiff complained to human resources about the unfounded Coaching.

60. During the May 8, 2024 meeting, Plaintiff explained to human resources that the Coaching did not make sense and that it seemed to be further age discrimination and retaliation for her recent, May 1st complaint of discrimination.

61. In response to Plaintiff's May 8, 2024 complaints, human resources was dismissive.

62. Defendant failed to take appropriate corrective or remedial measures, and failed to investigate Plaintiff's complaints of discrimination and retaliation.

63. On or about November 4, 2024, Douglas informed Plaintiff that she was being issued a Final Written Warning.

64. Defendant failed to provide Plaintiff with documentation of the Final Written Warning on November 4, 2024.

65. Defendant's stated reason for the Final Written Warning was that Plaintiff's behavior had not improved following the Coaching discipline from approximately six (6) months earlier.

66. During the November 4, 2024 meeting, Plaintiff expressed her surprise and confusion.

67.     Defendant failed to provide any examples or dates or specifics that actually supported this discipline.

68.     Plaintiff explained that the criticism of her behavior was false and made no sense.

69.     During the November 4, 2024 meeting, Defendant indicated that the Final Written Warning had not been documented.

70.     On or about November 6, 2024, Plaintiff complained about the Final Written Warning to human resources.

71.     Plaintiff explained that the Final Written Warning was unfounded and appeared to be further discrimination and retaliation for her complaints of discrimination.

72.     During the November 6, 2024 discussion, human resources acknowledged that Defendant deviated from its own policies and procedures when it verbally issued Plaintiff a Final Written Warning on November 4, 2024 without providing her documentation of the same.

73.     Human resources told Plaintiff that there was really nothing they could do because Defendant had failed to provide Plaintiff with any documentation in connection with the Final Written Warning.

74.     Defendant failed to take appropriate corrective or remedial measures, and failed to investigate Plaintiff's complaints of discrimination and retaliation.

75.     Within a few days or so of Plaintiff's November 6, 2024 discussion with human resources, Plaintiff had a follow-up discussion with human resources, where she again complained that she was being subjected to age discrimination and retaliation, including being held to a higher standard and being issued unfounded discipline.

76.     Human resources asked if Plaintiff's supervisors had provided her with a copy of the Final Written Warning yet, and Plaintiff indicated they had not.

77. Human resources told Plaintiff that they did not understand why the Final Written Warning was not entered into Defendant's software program, Workday, per company policy.

78. On or about November 22, 2024, Plaintiff submitted a written complaint of discrimination and retaliation to Douglas, Wilson and human resources.

79. This complaint was also submitted in Workday.

80. In her November 22, 2024 email, Plaintiff explained that she had been issued discipline – including the May 2024 Coaching and the November 2024 Final Written Warning – which was not warranted and issued only after her complaints of discrimination. Plaintiff indicated that Defendant failed to investigate her prior complaints of discrimination and retaliation. Plaintiff explained that she wanted to be able to work in an environment where she is not treated differently due to her age or her complaints of age discrimination.

81. On or about January 10, 2025, Plaintiff received a notification from human resources indicating that its alleged investigation into her November 22, 2024 written complaints had concluded and that there was allegedly no evidence to substantiate her complaints.

82. Defendant failed to provide any explanation as to how it came to that alleged conclusion, what the alleged investigation entailed, who may have been interviewed as part of any investigation, or what the factual findings from the investigation were.

83. Defendant failed to take any steps to prevent or correct the discrimination and retaliation to which Plaintiff was subjected, and failed to take any steps to ensure that Plaintiff would not be subjected to additional discrimination and retaliation as a result of her complaints.

84. Defendant's discriminatory and retaliatory behavior continued.

85. On or about February 11, 2025, Defendant terminated Plaintiff's employment, effective immediately.

9

86.     Defendant's stated reason for terminating Plaintiff was that her behavior was not improving.

87.     This stated reason is false and a pretext for age discrimination and retaliation.

88.     At the termination meeting, Defendant failed to provide any explanation as to how Plaintiff's behavior was below expectations or what expectation(s) Plaintiff had allegedly not met.

89.     At the termination meeting, Defendant failed to provide Plaintiff with any examples, dates or specifics of how or when her behavior was allegedly deficient.

90.     No one else was terminated at the time.

91.     The other, substantially-younger and non-complaining employees reporting up to Douglas were retained.

92.     Defendant presented Plaintiff with a severance agreement at the time of her termination which attempted to convince her to release her claims against Defendant, including her claims of age discrimination and retaliation, by offering to pay her money.

93.     Upon information and belief, following Plaintiff's termination, Defendant reassigned her job responsibilities to substantially-younger and/or non-complaining employees.

94.     Defendant failed to follow its own progressive discipline policy in connection with the discipline it issued to Plaintiff including her termination.

95.     Defendant has not provided any legitimate, non-discriminatory or non-retaliatory explanation for violating its own progressive discipline policy.

96.     The discriminatory and retaliatory conduct of Defendant, as alleged herein, was sufficiently severe and/or pervasive to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff

believe that the conditions of employment had been altered and that a hostile work environment existed.

97.    The retaliatory actions taken against Plaintiff after she complained of discrimination would have discouraged a reasonable employee from complaining about discrimination.

98.    Defendant's discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

99.    Defendant's comments and conduct evidence a bias against older employees.

100.    Defendant's age discriminatory conduct directed towards Plaintiff is part of a pattern and practice of age discrimination at Defendant.

## COUNT I - ADEA

101.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

102.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADEA.

103.    Defendant's violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

104.    As a direct and proximate result of Defendant's violations of the ADEA, Plaintiff has suffered damages including lost earnings, loss of earning capacity, lost benefits, emotional distress, pain and suffering, humiliation, and loss of life's pleasures.

105.    As a direct and proximate result of Defendant's violations of the ADEA, Plaintiff has incurred and will continue to incur attorneys' fees and costs.

106.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

107.    No previous application has been made for the relief requested herein.

## COUNT II - PHRA

108.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

109.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

110.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered damages including lost earnings, loss of earning capacity, lost benefits, emotional distress, pain and suffering, humiliation, and loss of life's pleasures.

111.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has incurred and will continue to incur attorneys' fees and costs.

112.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

113.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

a.    declaring the acts and practices complained of herein to be in violation of the ADEA;

12

b.      declaring the acts and practices complained of herein to be in violation of the PHRA;

c.      enjoining and permanently restraining the violations alleged herein;

d.      entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

e.      awarding compensatory damages to make Plaintiff whole for all past and future lost earnings, earning capacity, and benefits, which Plaintiff has suffered and will continue to suffer as a result of Defendant's unlawful conduct;

f.      awarding compensatory damages to Plaintiff for past and future emotional distress, pain and suffering, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered and will continue to suffer as a result of Defendant's unlawful conduct;

g.      awarding liquidated damages to Plaintiff under the ADEA;

h.      awarding pre-judgment and post-judgment interest to Plaintiff;

i.      awarding Plaintiff the costs of suit and reasonable attorneys' fees;

j.      awarding Plaintiff such other damages as are appropriate under the ADEA and the PHRA; and

k.      granting such other and further relief as this Court may deem just, proper, or equitable.

CONSOLE MATTIACCI LAW, LLC

By: */s/ Kevin Console*_____
   KEVIN CONSOLE, ESQ.
   1525 Locust St., 9th Floor
   Philadelphia, PA 19102
   Phone: (215) 545-7676
   Kevinconsole@consolelaw.com

   *Attorneys for Plaintiff*

Dated: <u>May 5, 2026</u>